

FILED by ___ TM ___ D.C.
ELECTRONIC

Sep 25, 2012

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

## UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF FLORIDA
# 12-80181-CR-RYSKAMP/HOPKINS

Case No: _____

18 U.S.C. § 1349
18 U.S.C. § 1343
18 U.S.C. § 2
18 U.S.C. § 981
18 U.S.C. § 982

UNITED STATES OF AMERICA

v.

YAKOV "JACK" ALFASI, and
RFAEL "RAFI" RUBINEZ

        Defendants
_____/

### INDICTMENT

The Grand Jury charges that:

### GENERAL ALLEGATIONS

At all times material to this Indictment:

**A.     Fannie Mae**

1.      The Federal National Mortgage Association (Fannie Mae) was a government sponsored entity under the conservatorship of the Federal Housing Finance Agency since September 2008, and operating with the financial support of the U.S. Department of the Treasury. Fannie Mae purchased mortgage loans from banks, mortgage companies, and other entities, and retained the seller or another entity to service the loans.

2.      Mortgage loan servicing for Fannie Mae included, among other responsibilities, the collection of mortgage payments from borrowers, the maintenance of separate escrow accounts for

the principal and interest and the taxes and insurance portions of the mortgage payments, the payment of property taxes and insurance premiums from the funds collected from the borrowers, and the regular submission of financial reports to Fannie Mae.

**B.      Sky Investments**

3.      Sky Investments, Inc., d/b/a Northstar Lending, (Sky) was a mortgage lender with its principal offices located in Deerfield Beach, Florida.  In 2008, Sky contracted with Fannie Mae to become a seller/servicer, and originated and sold loans to Fannie Mae.  Initially, Sky did not service the loans it sold to Fannie Mae but subcontracted the servicing function to "GS," another Fannie Mae seller/servicer.

4.      In 2009, Fannie Mae terminated "GS" as a seller/servicer because "GS" was experiencing financial and operational problems.  In or about July 2009, Sky began servicing the mortgage loans it sold to Fannie Mae.  For purposes of servicing Fannie Mae loans, Sky maintained two separate escrow accounts at Texas Capital Bank in Richardson, Texas, one for taxes and insurance and one for principal and interest.  In the normal course of business, Sky received mortgage payment checks at its Deerfield Beach, Florida offices and deposited the funds into the taxes and insurance and principal and interest escrow accounts at Texas Capital Bank.

5.      Sky derived income from selling mortgage loans to Fannie Mae and other purchasers, and from servicing the loans it sold to Fannie Mae.  By the end of 2009, sales of loans to Fannie Mae made up over 90 percent of Sky's total sales of mortgage loans for 2009.

**C.      The Contract Between Fannie Mae and Sky**

6.      The mortgage selling and servicing contract between Fannie Mae and Sky incorporated by reference Fannie Mae's *Guides to Lenders (Guides)*, which imposed upon Sky

various obligations, including the duty to protect Fannie Mae's collateral, the duty to segregate funds for payment of taxes and insurance, a fiduciary duty with regard to handling mortgage payments, the duty to maintain a specific minimum net worth, and the duty to regularly submit financial reports to Fannie Mae.

7.      The *Guides* imposed upon Sky a duty to protect Fannie Mae's collateral.   In performing the duties incident to the servicing of mortgage loans, Sky was required to protect the beneficial interest of Fannie Mae in the mortgaged property, by, among other things, paying property taxes when due to avoid tax liens.

8.      The *Guides* mandated that Sky keep separate the funds allocated to pay taxes and insurance by placing a portion of the borrower's payment into an escrow account so that the funds would be available to pay taxes, special assessments, hazard and flood insurance premiums, mortgage insurance premiums, and authorized related items.

9.      The *Guides* made clear that Sky held a fiduciary position in its handling of mortgage loan payments since the funds and collateral were owned by beneficiary parties such as Fannie Mae and the borrowers.   As a fiduciary, Sky had a duty to act always in the best interests of the beneficiary parties, and never in any manner adverse or contrary to their interests.   Sky had no authority to use funds designated for taxes and insurance for any purpose other than paying taxes, insurance, and authorized related items.

10.     The *Guides* required Sky to regularly submit financial reports to Fannie Mae, including annual audited financial statements, and a quarterly report called a *Mortgage Bankers' Financial Reporting Form* (MBFRF), which Fannie Mae used to evaluate the creditworthiness and financial stability of Sky.

11.     The *Guides* required Sky to have and maintain at all times a minimum net worth, calculated as a specified dollar figure plus .25% of the outstanding principal balance of its total portfolio of mortgage loans serviced for Fannie Mae.

**D.      Suspension, Reinstatement, and Termination of Sky as a Seller/Servicer**

12.     On or about November 20, 2009, Fannie Mae suspended Sky as a seller/servicer because Sky failed to meet the minimum net worth requirements.  On or about January 11, 2010, Fannie Mae reinstated Sky as a seller/servicer after Sky provided Fannie Mae with bank records and other documents purporting to show a $2 million capital infusion into Sky.

13.     In or about late August 2010, Fannie Mae terminated Sky as a seller/servicer, after conducting a review of Sky's financial condition and operations, and discovering that approximately $2.5 million had been withdrawn from the taxes and insurance escrow account and used for purposes other than paying taxes and insurance.

**DEFENDANTS**

14.     Defendant **YAKOV "JACK" ALFASI** was an owner and officer of Sky, and held ownership and officer positions with other companies affiliated with Sky.

15.     Defendant **RFAEL "RAFI" RUBINEZ** was an owner and officer of Sky, and held ownership and officer positions with other companies affiliated with Sky.

**COUNT 1**
Conspiracy To Commit Wire Fraud
(18 U.S.C. § 1349)

16.     The allegations contained in paragraphs 1 through 15 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

4

17.     Beginning in or about September 2009, and continuing through in or about August 2010, at Palm Beach, Broward, and Miami-Dade Counties, in the Southern District of Florida, and elsewhere, the defendants,

**YAKOV "JACK" ALFASI**, and
**RFAEL "RAFI" RUBINEZ,**

did knowingly and willfully combine, conspire, confederate and agree with each other and with others unknown to the Grand Jury, to commit a certain offense against the United States, namely, to knowingly devise and intend to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and material omissions, and for the purpose of executing the scheme and artifice to defraud, to transmit and cause to be transmitted by means of wire communications in interstate commerce, certain writings, signs, signals, pictures and sounds, in violation of Title 18, United States Code, Section 1343.

**A.     Purpose and Object of the Conspiracy**

18.     It was a purpose and object of the conspiracy for the defendants to unjustly enrich themselves by using funds designated for payment of taxes and insurance for purposes other than paying taxes and insurance, and by misrepresenting and concealing the true financial condition of Sky in order to continue to operate Sky and derive income as a Fannie Mae seller/servicer, through materially false and fraudulent pretenses, representations, and promises, and material omissions.

**B.    Manner and Means of the Conspiracy**

19.    The defendants carried out the conspiracy in the following manner and by using the following means, among others:

**1.    Misappropriation of Taxes and Insurance Escrow Funds**

a.    Beginning in or about September 2009, and continuing through in or about August 2010, defendants **YAKOV "JACK" ALFASI** and **RFAEL "RAFI" RUBINEZ** withdrew and caused to be withdrawn approximately $2.6 million from the taxes and insurance escrow account at Texas Capital Bank, and transferred and caused to be transferred those funds to other bank accounts to be used for purposes other than paying taxes and insurance.

**2.    Misrepresentation of Sky's Net Worth to Fannie Mae**

b.    On or about December 30, 2009, in order to persuade Fannie Mae to lift the November 20, 2009 suspension of Sky and reinstate Sky as a seller/servicer to Fannie Mae, defendants **YAKOV "JACK" ALFASI** and **RFAEL "RAFI" RUBINEZ** received $2 million in cash from a third party, hereinafter referred to as "YT," deposited by wire transfer into a newly-opened money market account at SunTrust Bank.  This money market account was opened specifically for this cash deposit, and under conditions which allowed "YT" the authority to withdraw the cash.

c.    On or about December 31, 2009, an officer of Sky, hereinafter referred to as "KP," sent an e-mail to Fannie Mae stating:  "Attached is the bank print out and third party letter from Sun Trust our operating account.  Our CFO is out this week and is not available to provide interim financials today.  We should have something next Monday. . . .  Will you please lift the suspension."

    d.      On or about January 4, 2010, "KP" sent a follow-up e-mail to Fannie Mae stating, in part: "I have attached our Q4 Interim financials.  On Thursday I provided our account statement and a third party letter signed by the bank representative that shows the $2 million cash for the company."

    e.      On or about January 5, 2010, Fannie Mae responded by e-mail: "In addition to the income statement, balance sheet and verification from bank as to the deposit of funds, we are requesting a statement from your cpa [certified public accountant] that the information submitted is accurately represented in the documents you submitted."  On that same date, "KP" sent an e-mail to defendants **YAKOV "JACK" ALFASI** and **RFAEL "RAFI" RUBINEZ** stating: "We need the cpa letter for fannie."

    f.      On or about January 6, 2010, Sky's accounting firm sent a letter to Fannie Mae stating, in part: "We are the accountants for Sky Investments, Inc.  Please be advised that $2,000,000 was deposited into SunTrust Bank, account number [ ], on December 28, 2009."

    g.      On or about January 7, 2010, Fannie Mae sent an e-mail to "KP" requesting that Sky's accounting firm "provide a letter that verifies that the account is a corporate account and that no withdrawal for that amount has occurred."  On or about January 8, 2010, Sky's Chief Financial Officer forwarded this Fannie Mae e-mail to defendants **YAKOV "JACK" ALFASI** and **RFAEL "RAFI" RUBINEZ** and to a partner at Sky's accounting firm.

    h.      On or about January 8, 2010, Sky's accounting firm sent another letter to Fannie Mae, stating, in part: "Please be advised that the balance as of January 7, 2010 in the SunTrust Bank, which is a corporate account, number [ ], is $2,000,109.59.  No withdrawals have occurred as at January 7, 2010."

i.      On or about January 29, 2010, "YT" caused the withdrawal of $1.865 million from the SunTrust Bank money market account by wire transfer to a SunTrust account in the name of a company affiliated with "YT," hereinafter referred to as "UTC." "YT" subsequently caused the withdrawal of the balance of funds in the SunTrust bank money market account and the closure of the account.

j.      Defendants **YAKOV "JACK" ALFASI** and **RFAEL "RAFI" RUBINEZ** withheld from, and failed to disclose to, Fannie Mae material facts, including that "YT" was the source of the $2 million, that the $2 million had been deposited into a money market account under conditions which permitted "YT" the authority to withdraw the cash, that the $2 million had been withdrawn from the account, and that Sky was failing to meet the minimum net worth requirement.

3.     **Concealment of Misappropriated Taxes and Insurance Escrow Funds During Audit of Sky's 2009 Financial Statements**

k.      On or about February 11, 2010, in order to conceal from Sky's accountants conducting the audit of Sky's 2009 financial statements and from Fannie Mae the fact that approximately $1 million had been withdrawn from the taxes and insurance escrow account during 2009 and used for purposes other than paying taxes and insurance, defendants **YAKOV "JACK" ALFASI** and **RFAEL "RAFI" RUBINEZ** received a check for $1 million payable to Sky, drawn on the "UTC" SunTrust Bank account, and backdated to December 30, 2009, and caused the check to be deposited into Sky's operating account at SunTrust Bank.  On or about February 12, 2010, defendants **YAKOV "JACK" ALFASI** and **RFAEL "RAFI" RUBINEZ** caused Sky to issue a check for $1 million, drawn on Sky's operating account at SunTrust Bank, and backdated to

8

December 30, 2009, and caused the check to be deposited into the taxes and insurance escrow account at Texas Capital Bank.

l.     On or about March 1, 2010, after Sky's accountants completed the audit of Sky's 2009 financial statements, defendants **YAKOV "JACK" ALFASI** and **RFAEL "RAFI" RUBINEZ** caused $1 million to be withdrawn from the taxes and insurance escrow account at Texas Capital Bank by wire transfer to Sky's operating account at SunTrust Bank, and, on the same date, caused $1 million to be withdrawn from the Sky operating account at SunTrust Bank by wire transfer to the Bank of America account of an associate of "YT."

### 4.     False and Misleading Financial Reports to Fannie Mae

m.     On or about March 3, 2010, defendants **YAKOV "JACK" ALFASI** and **RFAEL "RAFI" RUBINEZ** caused Fannie Mae to receive Sky's 2009 audited financial statements, which contained materially false and misleading information about Sky's assets, liabilities, and net worth, and which failed to disclose material facts, including that the $2 million purported contribution to net worth had been withdrawn, that approximately $1 million had been withdrawn from the taxes and insurance escrow account in 2009 for purposes other than payment of taxes and insurance, and that Sky was failing to meet minimum net worth requirements.

n.     On or about April 23, 2010, defendants **YAKOV "JACK" ALFASI** and **RFAEL "RAFI" RUBINEZ** caused Fannie Mae to receive Sky's Fourth Quarter 2009 MBFRF report, which contained materially false and misleading information about Sky's assets, liabilities, and net worth, and which failed to disclose material facts, including that the $2 million purported contribution to net worth had been withdrawn, that approximately $1 million had been withdrawn from the taxes and insurance escrow account in 2009 for purposes other than payment of taxes and insurance, and that Sky was failing to meet minimum net worth requirements.

o.      On or about July 1, 2010, defendants **YAKOV "JACK" ALFASI** and **RFAEL "RAFI" RUBINEZ** caused Fannie Mae to receive Sky's First Quarter 2010 MBFRF report, which contained materially false and misleading information about Sky's assets, liabilities, and net worth, and which failed to disclose material facts, including that the $2 million purported contribution to net worth had been withdrawn, that approximately $1 million had been withdrawn from the taxes and insurance escrow account in 2009 for purposes other than payment of taxes and insurance, and that Sky was failing to meet minimum net worth requirements.

**5.      Concealment of Misappropriated Taxes and Insurance Escrow Funds, and Sky's True Net Worth, from Fannie Mae and Other Beneficiaries**

p.      On or about August 10, 2010, defendant **YAKOV "JACK" ALFASI** participated in a telephone call with Fannie Mae personnel in which Fannie Mae set a deadline of August 18, 2010, for Sky to file its Second Quarter 2010 MBFRF report, or face suspension.  In that telephone call, defendant **YAKOV "JACK" ALFASI** represented to Fannie Mae that Sky was attempting to meet that deadline, that he was going to provide Fannie Mae with documentation of a plan for raising capital, as he expected Sky to fall short of the minimum net worth requirement, and that he was continuing to operate Sky's business as usual.  In that telephone call, defendant **YAKOV "JACK" ALFASI** withheld from, and failed to disclose to, Fannie Mae material facts, including that approximately $2.5 million had been withdrawn from the taxes and insurance escrow account and used for purposes other than paying taxes and insurance, that the $2 million purported contribution to net worth had been withdrawn, that Sky's 2009 audited financial statements, Fourth Quarter 2009 MBFRF report, and First Quarter 2010 MBFRF report, all misrepresented Sky's assets, liabilities, and net worth, and that Sky had not maintained the minimum worth requirement since in or about September 2009.

q.      Defendants **YAKOV "JACK" ALFASI** and **RFAEL "RAFI" RUBINEZ**
withheld from, and failed to disclose to, Fannie Mae and other parties to whom they owed a fiduciary
duty, material facts, including that funds had been withdrawn from the taxes and insurance escrow
account and used for purposes other than payment of taxes and insurance, and that Sky was failing
to meet the minimum net worth requirement.

All in violation of Title 18, United States Code, Section 1349.

## COUNTS 2-44
Wire Fraud
(18 U.S.C. §§ 1343 and 2)

20.     The allegations contained in paragraphs 1 through 15, 18 and 19 of this Indictment
are realleged and incorporated by reference as though fully set forth herein.

21.     Beginning in or about September 2009, and continuing through in or about August
2010, at Palm Beach, Broward, and Miami-Dade Counties, in the Southern District of Florida, and
elsewhere, the defendants,

**YAKOV "JACK" ALFASI**, and
**RFAEL "RAFI" RUBINEZ,**

did knowingly and intentionally devise and intend to devise a scheme and artifice to defraud and to
obtain money and property by means of materially false and fraudulent pretenses, representations,
and promises, and material omissions.

11

22.     On or about the dates specified in each Count below, at Palm Beach, Broward, and Miami-Dade Counties, in the Southern District of Florida, and elsewhere, the defendants, for the purpose of executing the aforesaid scheme and artifice to defraud and attempting to do so, did knowingly transmit and cause to be transmitted by means of wire communications in interstate commerce, certain writings, signs, signals, pictures and sounds, as more particularly described in each count below:

| COUNT | DATE | DESCRIPTION OF WIRE COMMUNICATION |
|---|---|---|
| 2 | November 9, 2009 | Wire transfer of $36,914.23 from the taxes and insurance escrow account at Texas Capital Bank in Richardson, Texas to an account at Gibralter Private Bank and Trust in Coral Gables, Florida. |
| 3 | November 23, 2009 | Electronic communication from Sky's offices in Deerfield Beach, Florida to Texas Capital Bank in Richardson, Texas, to initiate a wire transfer of $412,500.00 from the taxes and insurance escrow account at Texas Capital Bank to the Sky operating account at SunTrust Bank. |
| 4 | November 30, 2009 | Electronic communication from Sky's offices in Deerfield Beach, Florida to Texas Capital Bank in Richardson, Texas, to initiate a wire transfer of $25,000.00 from the taxes and insurance escrow account at Texas Capital Bank to the Sky operating account at SunTrust Bank. |
| 5 | December 4, 2009 | Electronic communication from Sky's offices in Deerfield Beach, Florida to Texas Capital Bank in Richardson, Texas, to initiate a wire transfer of $75,000.00 from the taxes and insurance escrow account at Texas Capital Bank to the Sky operating account at SunTrust Bank. |
| 6 | December 24, 2009 | Electronic communication from Sky's offices in Deerfield Beach, Florida to Texas Capital Bank in Richardson, Texas, to initiate a wire transfer of $125,000.00 from the taxes and insurance escrow account at Texas Capital Bank to the Sky operating account at SunTrust Bank. |
| 7 | December 31, 2009 | E-mail from "KP" at Sky's offices in Deerfield Beach, Florida to Fannie Mae recipients located outside of the State of Florida. |

| 8 | January 4, 2010 | E-mail from "KP" at Sky's offices in Deerfield Beach, Florida to Fannie Mae recipients located outside of the State of Florida. |
| 9 | February 5, 2010 | Wire transfer of $59,317.06 from the taxes and insurance escrow account at Texas Capital Bank in Richardson, Texas to an account at Gibralter Private Bank and Trust in Coral Gables, Florida. |
| 10 | February 9, 2010 | Electronic communication from Sky's offices in Deerfield Beach, Florida to Texas Capital Bank in Richardson, Texas, to initiate a wire transfer of $150,000.00 from the taxes and insurance escrow account at Texas Capital Bank to the Sky operating account at SunTrust Bank. |
| 11 | February 18, 2010 | Electronic communication from Sky's offices in Deerfield Beach, Florida to Texas Capital Bank in Richardson, Texas, to initiate a wire transfer of $120,000.00 from the taxes and insurance escrow account at Texas Capital Bank to the Sky operating account at SunTrust Bank. |
| 12 | February 23, 2010 | Electronic communication from Sky's offices in Deerfield Beach, Florida to Texas Capital Bank in Richardson, Texas, to initiate a wire transfer of $20,000.00 from the taxes and insurance escrow account at Texas Capital Bank to the Sky operating account at SunTrust Bank. |
| 13 | March 1, 2010 | Electronic communication from Sky's offices in Deerfield Beach, Florida to Texas Capital Bank in Richardson, Texas, to initiate a wire transfer of $1,000,000.00 from the taxes and insurance escrow account at Texas Capital Bank to the Sky operating account at SunTrust Bank. |
| 14 | March 2, 2010 | Electronic communication from Sky's offices in Deerfield Beach, Florida to Texas Capital Bank in Richardson, Texas, to initiate a wire transfer of $75,000.00 from the taxes and insurance escrow account at Texas Capital Bank to the Sky operating account at SunTrust Bank. |
| 15 | March 5, 2010 | Electronic communication from Sky's offices in Deerfield Beach, Florida to Texas Capital Bank in Richardson, Texas, to initiate a wire transfer of $110,000.00 from the taxes and insurance escrow account at Texas Capital Bank to the Sky operating account at SunTrust Bank. |

| 16 | March 12, 2010 | Electronic communication from Sky's offices in Deerfield Beach, Florida to Texas Capital Bank in Richardson, Texas, to initiate a wire transfer of $25,000.00 from the taxes and insurance escrow account at Texas Capital Bank to the Sky operating account at SunTrust Bank. |
| 17 | March 16, 2010 | Electronic communication from Sky's offices in Deerfield Beach, Florida to Texas Capital Bank in Richardson, Texas, to initiate a wire transfer of $25,000.00 from the taxes and insurance escrow account at Texas Capital Bank to the Sky operating account at SunTrust Bank. |
| 18 | March 18, 2010 | Electronic communication from Sky's offices in Deerfield Beach, Florida to Texas Capital Bank in Richardson, Texas, to initiate a wire transfer of $40,000.00 from the taxes and insurance escrow account at Texas Capital Bank to the Sky operating account at SunTrust Bank. |
| 19 | March 19, 2010 | Electronic communication from Sky's offices in Deerfield Beach, Florida to Texas Capital Bank in Richardson, Texas, to initiate a wire transfer of $85,000.00 from the taxes and insurance escrow account at Texas Capital Bank to the Sky operating account at SunTrust Bank. |
| 20 | March 23, 2010 | Electronic communication from Sky's offices in Deerfield Beach, Florida to Texas Capital Bank in Richardson, Texas, to initiate a wire transfer of $40,000.00 from the taxes and insurance escrow account at Texas Capital Bank to the Sky operating account at SunTrust Bank. |
| 21 | March 29, 2010 | Electronic communication from Sky's offices in Deerfield Beach, Florida to Texas Capital Bank in Richardson, Texas, to initiate a wire transfer of $16,000.00 from the taxes and insurance escrow account at Texas Capital Bank to the Sky operating account at SunTrust Bank. |
| 22 | March 29, 2010 | Electronic communication from Sky's offices in Deerfield Beach, Florida to Texas Capital Bank in Richardson, Texas, to initiate a wire transfer of $20,000.00 from the taxes and insurance escrow account at Texas Capital Bank to the Sky operating account at SunTrust Bank. |
| 23 | April 5, 2010 | Electronic communication from Sky's offices in Deerfield Beach, Florida to Texas Capital Bank in Richardson, Texas, to initiate a wire transfer of $30,000.00 from the taxes and insurance escrow account at Texas Capital Bank to the Sky operating account at SunTrust Bank. |

| 24 | April 12, 2010 | Electronic communication from Sky's offices in Deerfield Beach, Florida to Texas Capital Bank in Richardson, Texas, to initiate a wire transfer of $25,000.00 from the taxes and insurance escrow account at Texas Capital Bank to the Sky operating account at SunTrust Bank. |
|---|---|---|
| 25 | April 20, 2010 | Electronic communication from Sky's offices in Deerfield Beach, Florida to Texas Capital Bank in Richardson, Texas, to initiate a wire transfer of $55,000.00 from the taxes and insurance escrow account at Texas Capital Bank to the Sky operating account at SunTrust Bank. |
| 26 | April 22, 2010 | Electronic communication from Sky's offices in Deerfield Beach, Florida to Texas Capital Bank in Richardson, Texas, to initiate a wire transfer of $10,000.00 from the taxes and insurance escrow account at Texas Capital Bank to the Sky operating account at SunTrust Bank. |
| 27 | April 23, 2010 | Electronic communication from Sky's offices in Deerfield Beach, Florida to Texas Capital Bank in Richardson, Texas, to initiate a wire transfer of $23,000.00 from the taxes and insurance escrow account at Texas Capital Bank to the Sky operating account at SunTrust Bank. |
| 28 | April 23, 2010 | Electronic submission of Sky's Fourth Quarter 2009 MBFRF report from Sky's offices in Deerfield Beach, Florida to a Fannie Mae location outside of the State of Florida. |
| 29 | April 26, 2010 | Electronic communication from Sky's offices in Deerfield Beach, Florida to Texas Capital Bank in Richardson, Texas, to initiate a wire transfer of $15,000.00 from the taxes and insurance escrow account at Texas Capital Bank to the Sky operating account at SunTrust Bank. |
| 30 | May 5, 2010 | Electronic communication from Sky's offices in Deerfield Beach, Florida to Texas Capital Bank in Richardson, Texas, to initiate a wire transfer of $30,000.00 from the taxes and insurance escrow account at Texas Capital Bank to the Sky operating account at SunTrust Bank. |
| 31 | May 6, 2010 | Electronic communication from Sky's offices in Deerfield Beach, Florida to Texas Capital Bank in Richardson, Texas, to initiate a wire transfer of $60,000.00 from the taxes and insurance escrow account at Texas Capital Bank to the Sky operating account at SunTrust Bank. |

| 32 | May 28, 2010 | Electronic communication from Sky's offices in Deerfield Beach, Florida to Texas Capital Bank in Richardson, Texas, to initiate a wire transfer of $20,000.00 from the taxes and insurance escrow account at Texas Capital Bank to the Sky operating account at SunTrust Bank. |
|---|---|---|
| 33 | June 4, 2010 | Electronic communication from Sky's offices in Deerfield Beach, Florida to Texas Capital Bank in Richardson, Texas, to initiate a wire transfer of $100,000.00 from the taxes and insurance escrow account at Texas Capital Bank to the Sky operating account at SunTrust Bank. |
| 34 | June 21, 2010 | Electronic communication from Sky's offices in Deerfield Beach, Florida to Texas Capital Bank in Richardson, Texas, to initiate a wire transfer of $40,000.00 from the taxes and insurance escrow account at Texas Capital Bank to the Sky operating account at SunTrust Bank. |
| 35 | June 22, 2010 | Electronic communication from Sky's offices in Deerfield Beach, Florida to Texas Capital Bank in Richardson, Texas, to initiate a wire transfer of $15,000.00 from the taxes and insurance escrow account at Texas Capital Bank to the Sky operating account at SunTrust Bank. |
| 36 | June 28, 2010 | Electronic communication from Sky's offices in Deerfield Beach, Florida to Texas Capital Bank in Richardson, Texas, to initiate a wire transfer of $30,000.00 from the taxes and insurance escrow account at Texas Capital Bank to the Sky operating account at SunTrust Bank. |
| 37 | July 1, 2010 | Electronic submission of Sky's First Quarter 2010 MBFRF report from Sky's offices in Deerfield Beach, Florida to a Fannie Mae location outside of the State of Florida. |
| 38 | July 6, 2010 | Electronic communication from Sky's offices in Deerfield Beach, Florida to Texas Capital Bank in Richardson, Texas, to initiate a wire transfer of $75,000.00 from the taxes and insurance escrow account at Texas Capital Bank to the Sky operating account at SunTrust Bank. |
| 39 | July 7, 2010 | Electronic communication from Sky's offices in Deerfield Beach, Florida to Texas Capital Bank in Richardson, Texas, to initiate a wire transfer of $25,000.00 from the taxes and insurance escrow account at Texas Capital Bank to the Sky operating account at SunTrust Bank. |

| 40 | August 2, 2010 | Electronic communication from Sky's offices in Deerfield Beach, Florida to Texas Capital Bank in Richardson, Texas, to initiate a wire transfer of $200,000.00 from the taxes and insurance escrow account at Texas Capital Bank to the Sky operating account at SunTrust Bank. |
|---|---|---|
| 41 | August 2, 2010 | Electronic communication from Sky's offices in Deerfield Beach, Florida to Texas Capital Bank in Richardson, Texas, to initiate a wire transfer of $30,000.00 from the taxes and insurance escrow account at Texas Capital Bank to the Sky operating account at SunTrust Bank. |
| 42 | August 2, 2010 | Wire transfer of $52,484.88 from the taxes and insurance escrow account at Texas Capital Bank in Richardson, Texas to an account at Gibralter Private Bank and Trust in Coral Gables, Florida. |
| 43 | August 2, 2010 | Electronic communication from Sky's offices in Deerfield Beach, Florida to Texas Capital Bank in Richardson, Texas, to initiate a wire transfer of $100,000.00 from the taxes and insurance escrow account at Texas Capital Bank to the Sky operating account at SunTrust Bank. |
| 44 | August 6, 2010 | Electronic communication from Sky's offices in Deerfield Beach, Florida to Texas Capital Bank in Richardson, Texas, to initiate a wire transfer of $73,000.00 from the taxes and insurance escrow account at Texas Capital Bank to the Sky operating account at SunTrust Bank. |

All in violation of Title 18, United States Code, Sections 1343 and 2.

## FORFEITURE ALLEGATIONS
### Conspiracy to Commit Wire Fraud; Wire Fraud

1.  The allegations of Counts 1-44 of this Indictment are realleged and, by this reference, fully incorporated herein for the purpose of alleging forfeiture to the United States of America pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

2.  Upon conviction of the offenses charged in Counts 1-44 of this Indictment, the defendants **YAKOV "JACK" ALFASI** and **RFAEL "RAFI" RUBINEZ**, shall forfeit to the United States of America any property which constitutes or is derived from proceeds traceable to violations of Title 18, United States Code, Section 1343, specified unlawful activities as defined in Title 18, United States Code, Section 1956(c)(7)(A) and 1961(1)(B), and Title 18, United States Code, Section 1349, conspiracy to commit such offense.

3.  The property subject to forfeiture includes, but is not limited to, a money judgment in the amount of at least $2,600,000.00 in United States Currency, said sum representing the proceeds from the above described violations.

4.  If any property subject to forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), as a result of any act of omission of the defendants –

   a.  cannot be located upon the exercise of due diligence;

   b.  has been transferred or sold to, or deposited with, a third party;

   c.  had been placed beyond the jurisdiction of the court;

   d.  has been substantially diminished in value; or

    e.       had been commingled with other property that cannot be divided without difficulty;

it is the intent of the United States of America, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any properties of the defendants for the criminal forfeiture money judgment up to at least $2,600,000.00 in United States Currency.

All pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c); Title 18, United States Code, Section 1343, specified unlawful activities as defined in Title 18, United States Code, Section 1956(c)(7)(A) and 1961(1)(B); Title 18, United States Code, Section 1349; and Title 21, United States Code, Section 853(p).

A TRUE BILL

_____
FOREPERSON

WIFREDO A. FERRER
UNITED STATES ATTORNEY

ROLANDO GARCIA
ASSISTANT UNITED STATES ATTORNEY

JOSEPH A. CAPONE
SPECIAL ASSISTANT UNITED STATES ATTORNEY

19

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| UNITED STATES OF AMERICA | CASE NO. _____ |
|---|---|

vs.

**YAKOV "JACK" ALFASI, and**
**RFAEL "RAFI" RUBINEZ,**

                           **Defendants.**
_____/

**CERTIFICATE OF TRIAL ATTORNEY***

**Superseding Case Information:**

**Court Division:** (Select One)

New Defendant(s)         Yes _____    No _____
Number of New Defendants   _____
Total number of counts       _____

_____ Miami    _____ Key West
___X___ FTL     _____ WPB    _____ FTP

I do hereby certify that:

1.    I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2.    I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3.    Interpreter:   (Yes or No)   __No__
       List language and/or dialect   _____

4.    This case will take   __5__   days for the parties to try.

5.    Please check appropriate category and type of offense listed below:

    (Check only one)                    (Check only one)

| | | | | | |
|---|---|---|---|---|---|
| I | 0 to 5 days | X | Petty | | |
| II | 6 to 10 days | | Minor | | |
| III | 11 to 20 days | | Misdem. | | |
| IV | 21 to 60 days | | Felony | X | |
| V | 61 days and over | | | | |

6.    Has this case been previously filed in this District Court? (Yes or No)   __No__

If yes:
Judge: _____    Case No. _____
(Attach copy of dispositive order)
Has a complaint been filed in this matter?   (Yes or No)   __No__
If yes:
Magistrate Case No.              __N/A__
Related Miscellaneous numbers:   __N/A__
Defendant(s) in federal custody as of   __N/A__
Defendant(s) in state custody as of   __N/A__
Rule 20 from the   __N/A__   District of _____

Is this a potential death penalty case? (Yes or No)   __No__

7.    Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to October 14, 2003?   _____ Yes   __X__ No

8.    Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to September 1, 2007?   _____ Yes   __X__ No

_____
JOSEPH CAPONE
SPECIAL ASSISTANT UNITED STATES ATTORNEY
Admin. No. A5500459

*Penalty Sheet(s) attached

REV 4/8/08

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
<u>PENALTY SHEET</u>

**Defendant's Name**: <u>Yakov "Jack" Alfasi</u>

**Case No**: _____

Count  #: 1

   <u>Conspiracy to Commit Wire Fraud</u>

   <u>18 USC § 1349</u>

**\* Max.Penalty**: <u>20 years' imprisonment; $250,000 Fine or the greater of twice the gain or twice the loss; 5 years' supervised release</u>

Counts #: 2 - 44

   <u>Wire Fraud</u>

   <u>18 USC §§ 1343 & 2</u>

**\*Max. Penalty**: <u>20 years' imprisonment; $250,000 Fine or the greater of twice the gain or twice the loss; 5 years' supervised release</u>

Count  #:

_____

_____

**\*Max. Penalty:**

Count  #:

_____

_____

**\*Max. Penalty:**

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### PENALTY SHEET

**Defendant's Name: <u>Rfael "Rafi" Rubinez</u>**

**Case No:** _____

Count #: 1

   Conspiracy to Commit Wire Fraud

   18 USC § 1349

**\* Max.Penalty**: <u>20 years' imprisonment; $250,000 Fine or the greater of twice the gain or twice the loss; 5 years' supervised release</u>

Counts #: 2 - 44

   Wire Fraud

   18 USC §§ 1343 & 2

**\*Max. Penalty**: <u>20 years' imprisonment; $250,000 Fine or the greater of twice the gain or twice the loss; 5 years' supervised release</u>

Count #:

_____

_____

**\*Max. Penalty:**

Count #:

_____

_____

**\*Max. Penalty:**

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

No. _____

UNITED STATES _____ DISTRICT _____ COURT

_____ Southern _____ District of _____ Florida

_____ Northern _____ Division

# THE UNITED STATES OF AMERICA

vs.

YAKOV "JACK" ALFASI, and

RFAEL "RAFI" RUBINEZ,

## INDICTMENT

18 USC § 1349   18 USC § 1343
18 USC § 2   18 USC § 981
18 USC § 982

A true bill.

_____
Foreman

Filed in open court this _____

of _____ , A.D. 20 _____ day

_____
Clerk

Bail. $ _____

GPO 863 928